UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUAN M. PEREZ,

Petitioner,

v.                                          Civil Action No.  09-0024  (JDB)

HARLEY G. LAPPIN,

Respondent.

MEMORANDUM OPINION

This matter is before the Court on respondent's response to the February 6, 2009, order to show cause and his motion to dismiss or transfer the petition for a writ of mandamus. Petitioner, who is currently serving a federal sentence, originally came to the United States from Cuba during the Mariel boatlift in 1980. In this action, he challenges the provisions under which his custody classification and security level are set.[1]  For the reasons discussed below, the Court will

---

[1]   Woven throughout petitioner's submissions is a constitutional challenge to a Mariel Cuban's indefinite detention pursuant to a final deportation order, as there is no significant likelihood that his removal to Cuba can be effected in the reasonably foreseeable future. Relying on the Supreme Court's holdings in *Clark v. Martinez*, 543 U.S. 371 (2005), and *Zadvydas v. Davis*, 533 U.S. 678 (2001), petitioner argues that he "and other Mariel Cubans and non-Mariel-Cubans would be released into the community within six months because there is no sufficiently strong justification for . . . indefinite civil detention." Pet. ¶ 13; *see id.* ¶ 9.

As is discussed in this memorandum opinion, petitioner currently is serving a criminal sentence imposed by the United States District Court for the District of New Jersey. At this time, then, his detention pertains neither to his status as a Mariel Cuban nor to the existence of a deportation order. It is uncertain what exactly will happen when his current sentence is completed. His current detention is not indefinite, and, therefore, this constitutional challenge is

(continued...)

grant respondent's motion and dismiss this action.

## I.  BACKGROUND

### A.  Long-Term Detainees in Federal Custody

The Federal Bureau of Prisons ("BOP") has in its custody certain long-term detainees who are no longer serving a sentence but whose "detention is indeterminate [because] they will not, in all probability, be repatriated to their home countr[ies]." P.S. 5100.08, Inmate Security Designation and Custody Classification (9/12/2006) ("P.S. 5100.08"), ch. 3, p. 9.  The term "long term detainee" means:

> A non-U.S. citizen (alien) who has:
>
> • finished serving a local, state, or federal sentence;
> • completed immigration proceedings that have resulted in an order of deportation, exclusion, or other means of removal by either the Executive Office for Immigration Review (EOIR), or the Bureau of Immigration and Customs Enforcement (ICE), formerly the Immigration and Naturalization Service (INS); and[]
> • cannot be removed from the country for various reasons.

*Id.*, ch. 2, pp. 2-3.  These long-term detainees include "Mariel Cubans . . . who entered the United States during the Mariel boatlift between April 15, 1980 and October 31, 1980[.]" *Id.*, ch. 3, p. 9. Petitioner alleges that he "is a native and citizen of Cuba who came to the United States in June of 1980 in the Mariel-Cuba Boatlift." Pet. ¶ 5.

### B.  Petitioner's Criminal History

Petitioner alleges that "[h]e was paroled [on] May 22, 1982[,] and has been in that status since then." Pet. ¶ 5. He further alleges that he "is serving a 65 month[] federal sentence

---

[1](...continued)
premature.

imposed for violating Title 18 U.S.C.A. §§ 1341 and [134]2, imposed by the United States District Court for the District of New Jersey." *Id.* ¶ 3.

Drawing from a prior judicial decision, respondent submits a fuller picture of petitioner's criminal history and current status:

> Approximately 125,000 Cubans eventually came to the United States in the [Mariel] Boatlift. Since nearly all of the Mariel Cubans arrived without appropriate entry documentation, most were detained at the border pending a status determination (admission or exclusion). Pending this determination, the vast majority of arrivals were released on immigration parole as excludable aliens, pursuant to 8 U.S.C. § 1182(d)(5). Petitioner was one of these parolees.
>
> Since his arrival in this country, Petitioner has faced criminal charges and been convicted for the offenses of theft, attempted forgery, receiving stolen property (two occasions), grand theft, credit card fraud (three occasions), possession of a forged driver's license, grand larceny (four counts), indecent exposure, unnatural and lascivious acts, fraudulent checks, burglary, and petit theft. On September 17, 1980, an Immigration Judge . . . denied Petitioner's asylum petition and ordered him excluded and deported under Section 212(a)(9) and (20) of the Immigration and Nationality Act . . . . The order was affirmed by the Board of Immigration Appeals on October 30, 1980. Subsequently, Perez was paroled into the United States and, between 1982 and 2003, he lived in Massachusetts, Maine, Florida, New York, Texas, New Jersey, and Missouri. After serving his most recent criminal sentence at the Federal Correctional Institution at Loretto, Pennsylvania, Perez was released to ICE custody on July 18, 2003, pending a review of his parole status. Petitioner was denied parole in his most recent review by a decision dated September 29, 2004; the Board found in light of [his] propensity to engage in recidivist criminal behavior . . . [his] institutional misconduct, and [his] failure to assume responsibility for [his] past criminal actions, it is not clearly evident that [Perez is] unlikely to remain non-violent, and or unlikely to pose a threat to the community [if released].

Defendant's Response to Order to Show Cause and in Support of his Motion to Dismiss, or in the Alternative, to Transfer ("Resp't Opp'n"), Ex. 1 (Memorandum and Order, *Perez v. Assoc.*

*Comm'r of Enforcement for the Bureau of Immigration & Customs Enforcement*, Civ. No. 04-2118 (M.D. Pa. filed December 4, 2004) (internal citations and quotation marks omitted) (brackets in original)) at 1-2.[2]  The Middle District of Pennsylvania found that, notwithstanding the decades petitioner had spent in the United States, he is an excludable alien who is treated as if he were detained at the border without having entered this country effectively.  *Id.*, Ex. 1 at 3; *see also id.*, Ex. 2-3 (September 17, 1980 Decision of the Immigration Judge, File No. A-23 227 092, and October 30, 1980 Board of Immigration Appeals Order, respectively).

It appears that petitioner was released at some point after this December 4, 2004 decision, and in 2005 he committed another criminal offense.  *See* Resp't Opp'n., Ex. 6 (March 17, 2006 Judgment in a Criminal Case, Case No. 2:05cr409-01) at 1.  The record reflects that petitioner pled guilty to one count of fraud by wire, radio or television, *see* 18 U.S.C. §§ 1342 and 1343, and that he currently is serving a 41-month sentence imposed by the United States District Court for the District of New Jersey on March 17, 2006.  *Id.* at 1-2.  According to the BOP's Inmate Locator (http://www.bop.gov/iloc2/LocateInmate.jsp), he is to be released in February 2010.[3]

---

[2] The Court presumes that any reference to violence in petitioner's criminal history is a reference to a 1979 robbery conviction in Cuba for which he was sentenced to 12 years' imprisonment, a term he was serving immediately prior to his arrival in the United States.  *See* Resp't Opp'n, Ex. 2 (September 17, 1980 Decision of the Immigration Judge, File No. A-23 227 092) at 2; *see also* Gov't Resp. to Pet. for Writ of Habeas Corpus, *Perez v. Assoc. Comm'r of Enforcement for the Bureau of Immigration & Customs Enforcement*, Civ. No. 04-2118 (M.D. Pa. filed Oct. 21, 2004).

[3] The record does not explain the discrepancy in the duration of petitioner's current sentence.  If petitioner were to remain incarcerated from March 2006 through February 2010, he will have served approximately 47 months.  If, as respondent represents, petitioner were serving a 41-month sentence beginning in March 2006, he would have completed the full sentence by August 2009.  If, as petitioner alleges, he were serving a 65-month sentence, he would complete the full sentence by August 2011.  In any event, all agree that petitioner is still serving that

(continued...)

But petitioner still remains subject to the 1980 deportation order.  Resp't Opp'n, Ex. 2-3; *see id.*, Ex. 4 (Request for Administrative Remedy) at 2 ("I am already been deported [sic] since September 17, 1980 and renewed on February 2005[.]") .

### *C.  Petitioner's Custody Classification and Security Level*

Custody classification is "[t]he review process to assign a custody level based on an inmate's criminal history, instant offense, and institutional adjustment." P.S. 5100.08, ch. 2, p. 2; *see id.*, ch. 6, p. 1.  "A custody level (i.e., COMMUNITY, OUT, IN, and MAXIMUM) dictates the degree of staff supervision required for an individual inmate." *Id.*, ch. 2, p. 2 (capital letters in original).  The custody level "IN" is "[t]he second highest custody level assigned to an inmate," and "[i]nmates with IN custody are not eligible for work details or programs outside the institution's secure perimeter." *Id.*

The term "security level" describes:

> the structural variables and inmate-to-staff ratio provided at the various types of [BOP] institutions . . . [and] identifies the institution type required to house inmates based on their histories, institutional adjustment, and Public Safety Factors as well as the physical security of the institution to include mobile patrols, gun towers, perimeter barriers, housing, detection devices, inmate-to-staff ratio, and internal security.

P.S. 5100.08, ch. 2, p. 5.  "[BOP] institutions are classified into one of five security levels: **MINIMUM**, **LOW**, **MEDIUM**, **HIGH**, and **ADMINISTRATIVE** based on the level of security and staff supervision the institution is able to provide." *Id.*, ch. 1, p. 1 (capital letters and bold type in original).

---

[3](...continued)
sentence.

A public safety factor ("PSF") is applied to an inmate "who [is] not appropriate for placement at an institution which would permit inmate access to the community . . .." P.S. 5100.08, ch. 2, p. 4. It reflects "relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behaviors that require[] additional security measures . . . to ensure the safety and protection of the public," *id.*, ch. 5, p. 7, and is among the factors "used to determine the inmate's security level," *id.*, ch. 4, p. 5. The PSF "overrides security point scores to ensure [that] the appropriate security level is assigned to an inmate, based on his . . . demonstrated current or prior behavior." *Id.*, ch. 2, p. 4.

Petitioner in custody at the Big Spring Correctional Center, a facility operated by a private corporation under contract with the BOP. Pet. ¶ 1. He states that the BOP has assigned him a PSF to reflect his status as a deportable alien (Code H). *See id.* ¶ 11; *see also* P.S. 5100.08, ch. 3, pp. 9-10; *id.*, ch. 4, p. 13. The BOP applies Code H to all long-term detainees and,"[w]hen applied, the . . . long-term detainee[s] shall be housed in at least a Low security level institution." P.S. 5100.08, ch. 5, p. 9.

In this action, petitioner alleges that the PSF assigned to him renders him ineligible for a reduction in sentence upon his successful completion of a substance abuse treatment program, for release from custody, or for placement in a prison camp or community correctional facility. Pet. ¶¶ 4, 9, 11; *see* 18 U.S.C. §§ 3621(e)(2)(B), 3622 and 3624(c). He asserts that P.S. 5100.08 is unconstitutional with respect to its treatment of long-term detainees on two grounds: (1) it impermissibly is based on a Mariel Cuban's alienage and thus offends due process, and (2) it denies him equal protection of the law. *See* Pet. ¶¶ 12-13. He demands a declaratory judgment that the offending provisions of P.S. 5100.08 "as applied to Mariel-Cubans [who are] long-term

detainee[s] violate the Due Process and Equal Protection Clause[s] of the United States Constitution." *Id.* at 9-10.

## II. DISCUSSION[4]

### *A. Dismissal Under Rule 12(b)(6)*

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (other citations omitted). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" to

---

[4] For purposes of this Memorandum Opinion, the Court will presume without deciding that petitioner has standing to bring his claims, that service of process has been effected on the respondent, and that petitioner exhausted his available administrative remedies prior to filing this action. Furthermore, the Court summarily disposes of petitioner's claim, *see* Pet. ¶¶ 1, 7, that the United Nations Standard Minimum Rules for the Treatment of Prisoners ("SMR") is a valid basis for this court's jurisdiction. *See Serra v. Lappin*, No. 07-1589, 2008 WL 929525, at *7 (N.D. Cal. Apr. 3, 2008) (concluding that plaintiffs' claim under the SMR "is not legally cognizable" because it is "a guidance document prepared by an international organization . . .[,] not laws of the United States, [or] . . . a United States treaty binding on this Court"). Lastly, because the Court concludes that this action must be dismissed, respondent's motion to transfer this action to the United States District Court for the Northern District of Texas will be denied as moot.

provide "grounds" of "entitle[ment] to relief." *Twombly*, 550 U.S. at 555.  Or as the Supreme Court more recently stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (quoting *Twombly*, 550 U.S. at 556).  A complaint alleging facts which are "'merely consistent with' a defendant's liability, . . . 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly* 550 U.S. at 557) (brackets omitted).

1. Petitioner Fails to State a Due Process Claim

Respondent argues that petitioner fails to state a due process claim with respect to his custody and security levels, *see* Resp't Opp'n at 16-17, which place petitioner in custody at a low security institution.  The Court concurs.

"The [D]ue [P]rocess [C]lause is triggered when the government deprives an individual of life, property or liberty." *Phillips v. Smith*, No. 05-0178, 2006 WL 463249, at *3 (D.D.C. Feb. 24, 2006) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989)).  "[A] deprivation in prison implicates a liberty interest protected by the Due Process Clause only when it imposes an 'atypical and significant hardship' on an inmate in relation to the most restrictive confinement conditions that prison officials, exercising their administrative authority to ensure institutional safety and good order, routinely impose on inmates serving similar sentences." *Hatch v. District of Columbia*, 184 F.3d 846, 856 (D.C. Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Decisions about where an inmate is confined and his security classification are left to prison managers. *See* 18 U.S.C. § 4001(b) (vesting the authority to control and manage federal correctional institutions and to classify inmates in the Attorney General). It is settled that an inmate has no liberty interest in his designation to a particular correctional facility. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("[A]n interstate prison transfer, including one from Hawaii to California, does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself."); *Spuck v. Ridge*, No. 09-1397, 2009 WL 3182922, at *2 (3d Cir. Oct. 6, 2009) (per curiam) ("[A]n inmate does not have an inherent constitutional right to determine the place of his confinement, nor does he have a state-created liberty interest which allows him to be incarcerated at an institution of his choosing."); *Banks v. York*, 515 F. Supp. 2d 89, 109 (D.D.C. 2007) (concluding that a plaintiff detained at the D.C. Jail was not entitled to placement at another facility under less restrictive conditions because "an inmate has no right to a particular place of confinement or level of security"); *James v. Reno*, 39 F. Supp. 2d 37, 40 (D.D.C. 1999) ("Plaintiff has no liberty interest . . . in his place of confinement."), *aff'd*, No. 99-5081, 1999 WL 615084 (D.C. Cir. July 2, 1999) (per curiam).

Nor does an inmate have a liberty interest in his security level or custody classification. *See Kossie v. Crain*, No. 09-40476, 2009 WL 3816906, at *2 (5th Cir. Nov. 16, 2009) (per curiam) ("[T]his court has held that a prisoner does not have a protected liberty interest in his custody classification."); *Andreozzi v. Dep't of Defense*, No. 03-5304, 2004 WL 1083036, at *1 (D.C. Cir. May 13, 2004) (per curiam) (rejecting due process claim that alleged improper custody classification under United States Disciplinary Barracks' point-based classification system); *Banks v. York*, 515 F. Supp. 2d at 109; *James v. Reno*, 39 F. Supp. 2d at 39 ("Plaintiff has no

liberty interest in his security classification . . ..");  *Meyer v. Reno*, 911 F. Supp. 11, 16 (D.D.C. 1996) ("There is no protected liberty interest in obtaining or maintaining a particular security classification."); *Pryor-El v. Kelly*, 892 F. Supp. 261, 274 (D.D.C. 1995) ("[P]risoners generally do not have a liberty interest in being housed in a prison at a particular security level.").

Finally, "the assignment of a deportable alien PSF, in itself, does not implicate the Due Process Clause." *Becerra v. Miner*, 248 Fed. Appx. 368, 370 (3d Cir. Sept. 19, 2007) (per curiam).  "Being classified with a PSF of 'deportable alien' and its resulting consequences of disqualification for certain programs, as with any other security classification, is not outside what a prisoner 'may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law.'"  *Id.* at 370 (quoting *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (other citations omitted).

Unless an inmate is subjected to extraordinary treatment, the effects of prison officials' day-to-day decisions on inmates are merely consequences of confinement for having committed a crime.  *See Franklin v. District of Columbia*, 163 F.3d 625, 635 (D.C. Cir. 1998).  In this case, petitioner does not show that the PSF assigned to him has resulted in an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.  His due process claim therefore must fail.

2. Petitioner Fails to State an Equal Protection Claim

Equal protection principles "essentially direct 'that all persons similarly situated should be treated alike.'"  *Brandon v. Dist. of Columbia Bd. of Parole*, 823 F.2d 644, 650 (D.C. Cir. 1987) (citing *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  "The threshold inquiry in evaluating an equal protection claim is . . . 'to determine whether a person is similarly

situated to those persons who allegedly received favorable treatment.'" *Women Prisoners of Dist. of Columbia Dep't of Corrections v. Dist. of Columbia*, 93 F.3d 910, 924 (D.C. Cir.1996) (quoting *United States v. Whiton*, 48 F.3d 356, 358 (8th Cir. 1995)), *cert. denied*, 520 U.S. 1196 (1997).

At the outset, the Court notes that petitioner's current custody comes about not as a result of his status as an alien. Rather, he is serving a sentence imposed by a federal district court upon his entry of a guilty plea to one count of fraud. The regulations he challenges here "classify prisoners as those who are subject to custodial considerations (including those who have PSF status) and those who are not, not on the basis of alienage." *Suarez v. Samuels*, No. 07-1888, 2007 WL 2462628, at *2 (D.N.J. Aug. 27, 2007). Petitioner, then, fails to state an equal protection claim. *See McLean v. Crabtree*, 173 F.3d 1176, 1184 (9th Cir. 1999) (holding that denial of request for sentence reduction under 18 U.S.C. § 3621(e)(2)(B) on the basis of immigration detainer does not violate Equal Protection Clause ), *cert. denied*, 528 U.S. 1086 (2000); *Gonzalez-Radiya v. United States*, Nos. 06-CV-187-TUC-FRZ, 04-CR-254-TUC-FR, 2006 WL 1050284, at *1 (D. Ariz. Apr. 20, 2006) (rejecting argument that deportable alien prisoner's right to equal protection is violated by the fact that he, unlike his United States citizen counterparts, is ineligible for a one-year sentence reduction for attending a drug treatment program and for early release to a half-way house).

   3. <u>Petitioner Fails to State a Claim Under the Administrative Procedure Act</u>

Generally, under the Administrative Procedure Act ("APA"), "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Petitioner

appears to seek judicial review of the BOP's decision to promulgate and apply regulations in such a way that he, as a Mariel Cuban, is ineligible for consideration under 18 U.S.C. §§ 3621(e)(2)(B), 3622 and 3624(c).  *See* Pet. ¶¶ 1, 11-12.  In so doing, petitioner alleges "that the BOP has exceeded its authority and abused its discretion."  *Id.* ¶ 12.

"The control and management of Federal penal and correctional institutions . . . shall be vested in the Attorney General, who shall promulgate rules for the government thereof."  18 U.S.C. § 4001(b).  The BOP, under the Attorney General's direction, *see* 18 U.S.C. § 4042(a), "shall designate the place of the prisoner's imprisonment . . . [and] may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP], whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the [BOP] determines to be appropriate and suitable[.]"  18 U.S.C. § 3621(b); *see* 18 U.S.C. § 4081(directing the BOP to classify prisoners "according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions").  Petitioner relies on the APA as a basis for his claim, yet he articulates no basis for the proposition that the BOP lacks authority to promulgate regulations with respect to long-term detainees in its custody or to determine security and custody levels for those detainees.

Moreover, by statute, the BOP's decision to assign a PSF is not subject to judicial review under the APA.  18 U.S.C. § 3625 ("The provisions of . . . 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under [18 U.S.C. §§ 3621-26]."); *see Burnam v. Marberry*, No. 07-0097, 2008 WL 4190785, at *7 (W.D.

Pa. Sept. 10, 2008) (concluding, alternatively, that the assignment of a PSF "was made pursuant to [the BOP's] discretionary responsibilities regarding the designation of an inmate's place of imprisonment, and any subsequent transfers, bestowed on it under 18 U.S.C. § 3621(b)," and thus is not "subject to judicial review under Subsection 706(2)(A) of the APA"), *aff'd*, 313 Fed. Appx. 455 (3d Cir. 2009); *Jones v. Bureau of Prisons*, Nos. 1:04-CV-35, 1:04-CV-392, 2007 WL 965746, at *3 (E.D. Tex. Mar. 27, 2007) (concluding that a federal prisoner failed to state an APA claim regarding his custody classification because, "[p]ursuant to 18 U.S.C. § 3625, the BOP's substantive decision regarding a prisoner's designation is not reviewable under the [APA]"); *see also Enigwe v. Bureau of Prisons*, No. 06-457, 2006 WL 3791379, at *2-3 (D.D.C. Dec. 22, 2006) (concluding that, absent "a claim of constitutional violation, abuse of discretion, agency action contrary to law, or agency action exceeding the scope of its authority, the Court is precluded by [18 U.S.C. § 3625] from reviewing BOP's classification decision").

To the extent that petitioner seeks his immediate release from incarceration, or at least a shorter stay in custody, he must bring his claim in a petition for a writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973). In *Davis v. Fed. Bureau of Prisons*, 517 F. Supp. 2d 460 (D.D.C. 2007), a federal inmate alleged that his completion of a drug treatment program at a contract facility "was the equivalent of participation in the first step of BOP's drug abuse treatment program, that BOP should place him into the second step, and that upon completion of the BOP program BOP should consider reducing his sentence." *Id.* at 461. The district court dismissed the case for lack of subject matter jurisdiction because 18 U.S.C. § 3625 "excludes APA review of BOP determinations regarding placement of inmates in substance abuse treatment." *Id.* On appeal, the D.C. Circuit affirmed the dismissal on an alternate ground:

"a federal prisoner must bring his claim in habeas if success would have a 'probabilistic' effect on the duration of his custody." *Davis v. Fed. Bureau of Prisons*, No. 08-5053, 2009 WL 1791872, at *1 (D.C. Cir. June 5, 2009) (per curiam) (quoting *Razzoli v. Fed. Bureau of Prisons*, 230 F.3d 371, 375 (D.C. Cir. 2000)). Here, petitioner's success on the merits of his claims potentially could advance his release from custody, if he were eligible for a reduction in sentence, or for placement in a community correctional facility, or for release on an alternative basis. His remedy, then, lies through a habeas action, not through a claim under the APA.

### B.  Petitioner Is Not Entitled to Mandamus Relief

Mandamus is a drastic remedy to be invoked only in extraordinary situations, *see Chatman-Bey v. Thornburgh*, 864 F.2d 804, 806 n.2 (D.C. Cir. 1988), and it is granted only when essential to the interests of justice, *see Starnes v. McGuire*, 512 F.2d 918, 929 (D.C. Cir. 1974). Mandamus is proper only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Council of and for the Blind of Delaware County Valley v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983) (en banc); *see also Northern States Power Co. v. United States Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997). The party seeking mandamus has the "burden of showing that its right to issuance of the writ is 'clear and indisputable.'" *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988) (citing *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953)). Where the action a petitioner seeks to compel is discretionary, one has no clear right to relief and mandamus therefore is not an appropriate remedy. *See, e.g., Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

Petitioner cannot meet his heavy burden for mandamus relief. For the reasons discussed

above, BOP's decisions with respect to inmate security and custody levels are discretionary. Petitioner thus has no right to the relief he demands, and the BOP is under no obligation to act as petitioner demands.  Mandamus relief is therefore not available.

## III.   CONCLUSION

Accordingly, the Court will discharge the order to show cause and will grant respondent's motion to dismiss.  A separate order accompanies this memorandum opinion.

/s/
JOHN D. BATES
United States District Judge

DATE:  November 30, 2009